# United States Court of Appeals
## For the First Circuit

No. 25-1862

PRAKASH DHOJ RANA,

Petitioner,

v.

TODD BLANCHE,[*] Acting Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Chief Judge,
Gelpí and Aframe, Circuit Judges.

Stuart Altman, with whom Law Office of Stuart Altman was on brief, for petitioner.

Pardis Gheibi, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, with whom M. Samer Budeir, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Brett A. Shumate, Assistant Attorney General, Civil Division, and Cindy S. Ferrier, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting Attorney General Todd Blanche is automatically substituted for former Attorney General Pamela J. Bondi as Respondent.

July 23, 2026

**AFRAME**, **Circuit Judge**.    When a noncitizen exhibits "indicia of incompetency" during immigration proceedings, Board of Immigration Appeals ("BIA") precedent requires the immigration judge ("IJ") to inquire further into the noncitizen's competency, render a competency finding, and explain the reasoning for that finding. Matter of M-A-M-, 25 I. & N. Dec. 474, 480-84 (BIA 2011). After petitioner Prakash Dhoj Rana provided some confused answers in response to IJ questioning during his removal hearing, Rana's counsel requested the hearing be adjourned so that Rana could undergo a mental health evaluation.    That evaluation concluded that Rana's "ability to assist his own attorney and the Immigration Court [was] . . . compromised" because of concentration and attention deficits.    Rana submitted this report to the IJ, but the IJ did not inquire further into Rana's competency, ruling instead that nothing in the report undermined her view that Rana was not credible.    The IJ denied Rana's applications for asylum, withholding or removal, and withholding under the Convention Against Torture ("CAT").

Rana appealed to the BIA, arguing, inter alia, that the IJ contravened Matter of M-A-M- because she did not find that there were indicia of Rana's incompetency requiring a competency inquiry.    The BIA dismissed the appeal, concluding that there were no such indicia before the IJ.    Because we believe the record

- 3 -

compels a contrary finding, we grant Rana's petition and remand for further proceedings.

## I.

Rana is a Nepalese national who, while living in Nepal, was active in the National Democratic Party, a political party that supported the constitutional monarchy in Nepal. During the early 2000s, Rana faced threats from members of the Nepalese Maoists, a political party that opposed the National Democratic Party.[1] These threats culminated in violence, and in February of 2002, Nepalese Maoists attacked Rana, hitting him in the head with a gun. As a result of this assault, Rana was left unconscious and required hospitalization. Following the assault, Rana continued to face threats, and so in May of 2002, at the urging of his wife and son, he fled Nepal for the United States.

Rana entered the United States with a B-2 visa, which permitted him to remain in this country until November 25, 2002. Rana overstayed his visa. Over the next several years, while Rana remained in the United States, he heard from his family in Nepal that they (and he) continued to receive threats from Nepalese Maoists. Eventually, Rana sought an immigration attorney to apply for asylum in the United States.

---

[1] The record also refers the Nepalese Maoist political party as "the Nepal Communist Party," the "Communist Party of Nepal," and the "Young Communist League."

- 4 -

In March 2015, Rana filed a Form I-589 application for asylum, withholding of removal, and withholding under the CAT. Shortly thereafter, the Department of Homeland Security initiated removal proceedings against Rana by serving him with a notice to appear. In response, Rana admitted the factual allegations, conceded removability, and filed evidence to support his application for asylum, including identity documents, letters, and an affidavit.

In July 2021, at a removal hearing, Rana provided oral testimony about his circumstances in Nepal. During the hearing, the IJ identified six discrepancies between Rana's supporting documents and his oral hearing testimony. The IJ asked Rana about these discrepancies, and Rana responded that he either did not know or did not remember the information.

Rana testified that he was unable to remember certain events because he was nervous and that he had not been treated for memory issues. The IJ then granted Rana a continuance so that he could obtain a mental health evaluation to determine whether a medical condition caused the discrepancies in his testimony.

About six weeks later, Dr. Stephen Reich, a licensed psychologist, conducted a mental health evaluation of Rana. Dr. Reich memorialized this evaluation in a report that explained that Rana was "an intelligent man" with a good "understanding of the nature of a judicial proceeding in an Immigration Court." However,

the report also explained that Rana "ha[d] trouble focusing, concentrating, and paying attention" and that "[h]is ability to assist his own attorney and the Immigration Court [was] thus compromised." Rana submitted Dr. Reich's report to the IJ in September 2021, and the following month, the IJ reconvened the removal hearing.

In January 2022, the IJ issued an order denying Rana's application for asylum, withholding of removal, and CAT relief. The IJ based this order on her conclusion that Rana was not credible because his "explanations for the inconsistencies were unconvincing and he did not overcome his lack of credibility with sufficient credible corroborating evidence." The IJ described Dr. Reich's report as an effort to "rehabilitate [Rana's] credibility," and asserted that the report failed to achieve that objective because Rana "readily answered the questions" asked of him, his "demeanor seemed positive [and] attentive," and "he did not appear to lose focus." At no point did the IJ mention Rana's competency (or lack thereof). The IJ concluded by ordering Rana's removal to Nepal.

Rana timely appealed to the BIA, arguing that the IJ erred by not recognizing that there were indicia of incompetency. The BIA rejected Rana's argument. It noted that the IJ had considered Dr. Reich's report and "accepted [its] conclusion." Nevertheless, the BIA observed that the IJ had found that Rana was

"positive [and] attentive, and that he did not appear to lose focus."  The BIA held that this finding was not clearly erroneous and upheld the IJ's credibility determination, notwithstanding Dr. Reich's report.  The BIA also stressed that Rana was represented by counsel, that his counsel did not assert incompetency to the IJ, and that there were no "indicia of incompetency" in the record.  Thus, the BIA held that the IJ acted properly by not inquiring into Rana's competency.

Rana timely petitioned this Court for review.

## II.

On appeal, Rana argues, inter alia, that the BIA failed to faithfully apply its precedent for considering the competency of a noncitizen in removal proceedings.  In particular, Rana claims that the BIA failed to recognize that he had placed before the IJ indicia of incompetency such that the IJ was required to inquire further into his competency.

In Matter of M-A-M-, 25 I. & N. Dec. 474, the BIA established a procedure for evaluating the mental competency of a noncitizen and ensuring adequate safeguards for those suffering incompetency.  See Calderon-Rodriguez v. Sessions, 878 F.3d 1179, 1182 (9th Cir. 2018).  We have not previously considered a claim brought by a noncitizen alleging an error under Matter of M-A-M-. But other courts of appeals have, and we are aware of none that

has questioned the application of that framework.[2]  Here, both parties apply the Matter of M-A-M- framework in discussing Rana's claim, so our analysis will follow suit.

Under Matter of M-A-M-, a noncitizen "is presumed to be competent to participate in removal proceedings."  25 I. & N. Dec. at 477.  "Absent indicia of mental incompetency," an IJ "is under no obligation to analyze [a noncitizen's] competency."  Id.  To determine whether a noncitizen "is competent to participate in immigration proceedings," an IJ must look to whether the noncitizen "has a rational and factual understanding of the nature and object of the proceedings, can consult with the attorney or representative if there is one, and has a reasonable opportunity to examine and present evidence and cross-examine witnesses."  Id. at 484.[3]

---

[2]    E.g., Reid v. Bondi, 132 F.4th 109, 126-28 (2d Cir. 2024); Hernandez Garmendia v. Att'y Gen., 28 F.4th 476, 486-87 (3d Cir. 2022); Diop v. Lynch, 807 F.3d 70, 75-76 (4th Cir. 2015); Camejo Gonzalez v. Garland, No. 20-60250, 2021 WL 4840962, at *1 (5th Cir. Oct. 15, 2021) (per curiam); Jatta v. Garland, No. 21-3584, 2022 WL 4365721, at *2-3 (6th Cir. Sep. 21, 2022) (per curiam); Lemus-Escobar v. Bondi, 158 F.4th 944, 954-55 (9th Cir. 2025); Singh v. Bondi, 146 F.4th 918, 924 (10th Cir. 2025); Joseph v. U.S. Att'y Gen., Nos. 22-14252 & 23-11632, 2025 WL 18420, at *3-4 (11th Cir. Jan. 2, 2025) (per curiam).

[3]    The standard for competency in immigration proceedings is informed by, but distinct from, the competency standard in criminal proceedings.  Matter of M-A-M-, 25 I. & N. Dec. 474, 478-79 (BIA 2011); see id. at 478 ("[I]n the criminal context . . . a person is not competent to stand trial if 'he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense.'" (quoting Drope v. Missouri, 420 U.S. 162, 171 (1975))).  This difference stems largely from the fact that a prosecution may

- 8 -

Indicia of incompetency can "include a wide variety of observations and evidence." Matter of M-A-M-, 25 I. & N. Dec. at 479. For example, an IJ might observe that the noncitizen fails to "understand and respond to questions," "stay on topic," or remain focused. Id. Additionally, the record may evince the noncitizen's incompetency through "medical reports or assessments," such as "testimony from medical health professionals." Id.

If there are indicia of incompetency, the IJ has "an affirmative duty" to consider a noncitizen's competency regardless of whether the noncitizen or their counsel raises the issue. Lemus-Escobar v. Bondi, 158 F.4th 944, 957 (9th Cir. 2025); see Reid v. Bondi, 132 F.4th 109, 126 n.14 (2d Cir. 2024). In doing so, the IJ "must take measures to determine whether [the noncitizen] is competent to participate in proceedings." Matter of M-A-M-, 25 I. & N. Dec. at 480. The IJ should ask questions probing the noncitizen's competence and may allow for a mental competency evaluation. Id. at 480-81. After this further inquiry, the IJ must "articulate [the competency] determination and his or her reasoning" for that determination. Id. at 481. If the IJ finds the noncitizen to be incompetent, the IJ must impose

---

not go forward against an incompetent criminal defendant whereas civil immigration proceedings may proceed even against an incompetent noncitizen. Id. at 478-79.

safeguards to assure the fairness of a further proceeding.  Id. at 481-82.

The IJ here did not conduct a Matter of M-A-M- inquiry. Rana argued to the BIA that the IJ committed an error by failing to conduct a competency assessment because the record contained indicia of incompetence.  The BIA disagreed, concluding that the IJ correctly declined to make a competency assessment because there were no such indicia.

In reviewing the BIA's conclusion that the IJ was not required to conduct a competency assessment, we confront a mixed question of law and fact.  See Lemus-Escobar, 158 F.4th at 954-55. That is because when an adjudicator asks whether "the record contains no indicia of incompetency," it must determine "whether a particular set of facts meets a legal standard."  Id. at 955. Though this inquiry is mixed, it is "fact-intensive."  Id.  In the past, we have reviewed fact-dependent mixed questions for substantial evidence.  See Alzaben v. Garland, 66 F.4th 1, 7 (1st Cir. 2023) (applying substantial evidence to the mixed question of whether a noncitizen entered a good-faith marriage).  Under that standard, we will disturb the BIA's finding only if the record "compel[s] a reasonable factfinder to reach a contrary determination."  Lopez-Quinteros v. Garland, 123 F.4th 534, 543 (1st Cir. 2024) (quoting Jianli Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012)).

That is the situation we face here. The IJ received testimony that Rana suffered a head injury in 2002 that led to a loss of consciousness and hospitalization. Moreover, at times during the hearing, Rana was unable to remember details in his testimony and testified to being nervous. As a result, the IJ continued Rana's hearing so that he could obtain a mental health evaluation. Ultimately, this evaluation stated that while Rana "is an intelligent man," his "ability to assist his own attorney and the Immigration Court is . . . compromised" by his inability to retain focus at certain times. Despite the presence of these facts and testimony, the IJ did not find indicia of incompetency, concluding only that the mental health evaluation did not alter her view that Rana was not credible. On appeal, the BIA cited Matter of M-A-M-, accurately described its framework, and acknowledged Dr. Reich's report. Nevertheless, it rejected Rana's challenge by concluding that there was a "lack of indicia of incompetency."

The BIA's conclusion is at odds with the record. There was evidence that Rana had suffered a head injury and appeared to suffer some level of distraction and confusion during the hearing. Moreover, the record includes a "direct assessment[]" of Rana's mental status, including "testimony from [a] medical health professional[]." Matter of M-A-M-, 25 I. & N. Dec. at 479. These are among the factors that Matter of M-A-M- specifically identifies

- 11 -

as potential indicia of incompetency. Id. Contra the BIA's description of Dr. Reich's report, the report directly implicated Rana's ability to present evidence and his capacity to assist his counsel. Under Matter of M-A-M-, these facts do not require the IJ to find Rana incompetent, but they do compel a finding that there were indicia of incompetency. The IJ therefore was required to "articulate [her] assessment of [Rana's] competence" or lack thereof. Mejia v. Sessions, 868 F.3d 1118, 1122 (9th Cir. 2017).

Before us, the government defends the BIA's ruling by relying on Muñoz-Monsalve v. Mukasey, 551 F.3d 1 (1st Cir. 2008). There, the noncitizen subject to removal was represented by counsel and displayed no "significantly probative" indicia of incompetency. Id. at 6. Based on those facts, we upheld the adequacy of the proceedings before the IJ and affirmed the noncitizen's removal. Id. at 6-7, 9. Muñoz-Monsalve is consistent with our application here of Matter of M-A-M-. As we explained, the Matter of M-A-M- framework applies only where there are indicia of incompetency. 25 I. & N. Dec. at 477 (citing Muñoz-Monsalve, 551 F.3d at 6). But once such indicia are present, the IJ must further inquire into the noncitizen's competency and make a finding, supported by reasoning, on that matter. See Mejia, 868 F.3d at 1122; see also Matter of M-A-M-, 25 I. & N. Dec. at 484.

The government also reads the IJ's statement that Rana had a positive and attentive demeanor and was able to readily

- 12 -

answer questions as indications that there were no indicia of incompetency.  There is, however, nothing that precludes a person from showing a positive and attentive demeanor while still exhibiting indicia of incompetency.  And here, even accepting that Rana was positive and attentive, there were still indicia of incompetency, namely, Dr. Reich's report and Rana's history of head trauma.

Next, the government relies on Rana's representation by counsel as a basis for rejecting his claim.  But the Matter of M-A-M- procedure is a sua sponte obligation of the IJ.  See Lemus-Escobar, 158 F.4th at 957 ("Whether or not the petitioner has counsel, the BIA has placed an affirmative duty on the IJ to make a competency determination whenever the record contains sufficient indicia of incompetency."); Matter of M-A-M-, 25 I. & N. Dec. at 477, 479-80.[4]  At some point, if Rana were found

---

[4]    Though, under Matter of M-A-M-, it is ultimately the IJ's burden to ensure a noncitizens' mental competency, we join the Ninth Circuit in warning noncitizens' advocates against raising late-breaking Matter of M-A-M- claims, as such arguments may "be seen as gamesmanship."  Lemus-Escobar, 158 F.4th at 957 n.3.  In this regard, we have noted that an advocate's "failure to raise a competency issue in a timely manner renders an ensuing claim of error particularly weak."  Muñoz-Monsalve, 551 F.3d at 6.  Here, however, Rana's counsel took on Rana's case relatively late in its lifespan and under unusually burdensome circumstances -- Rana's counsel took over more than five hundred cases, including Rana's, from another attorney who was appointed as an IJ.  Moreover, Rana's counsel raised competency as soon as Rana began providing confused answers, which occurred only at the end of Rana's testimony.

incompetent, the fact that Rana is represented by counsel might affect the procedures that an IJ would put in place.  See Mejia, 868 F.3d at 1122.  But here, the IJ did not reach that point in the Matter of M-A-M- framework because she never addressed Rana's competency at all.

Finally, we note that the IJ's credibility determination and the BIA's subsequent affirmance are not substitutes for a competency determination.  Competency is a distinct and antecedent question from credibility -- if a noncitizen is incompetent, they may be entitled to additional procedural safeguards under Matter of M-A-M-, 25 I. & N. Dec. at 481-483.  These procedural safeguards may help to reframe or explain statements or conduct that could otherwise suggest a lack of credibility.  The IJ's failure to address competency despite the relevant indicia for doing so undermines the credibility finding on which the IJ based her conclusions for ordering Rana removed.  We therefore decline to construe the IJ's and BIA's statements on credibility as implicit findings about competency.

## III.

Though Rana makes other challenges to the BIA's decision, we need not address them as our foregoing analysis is sufficient to **grant** Rana's petition, **vacate** the removal order, and **remand** the case to the BIA for further proceedings consistent with this opinion.

**So ordered**.